# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON

### Assigned on Briefs December 2, 2003

## STATE OF TENNESSEE v. GREGORY SKINNER

### Direct Appeal from the Circuit Court for Gibson County
### No. 16202     Clayburn L. Peeples, Judge

---

### No. W2003-00336-CCA-R3-CD  - Filed January 15, 2004

---

The defendant, Gregory Skinner, was convicted of two counts of sale of a Schedule II controlled substance, a Class C felony, and one count of sale of a counterfeit controlled substance, a Class E felony, and sentenced as a Range II, multiple offender to ten years for each of the two counts of sale of a Schedule II controlled substance, to be served concurrently, and to three years for the sale of a counterfeit controlled substance, to be served consecutively, for a total sentence of thirteen years. This sentence was ordered to be served consecutively to a previous sentence. The defendant appeals, arguing that the evidence was insufficient to support his convictions and that the trial court erred in applying a nonstatutory factor in setting his sentence. Following our review, we affirm the judgments of the trial court but remand for entry of corrected judgments in Counts 2 and 3.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgments

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Tom W. Crider, District Public Defender, for the appellant, Gregory Skinner.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Garry G. Brown, District Attorney General; and William D. Bowen and Jerald M. Campbell, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On March 10, 2001, Officer Mike Moody and Sergeant Steve Webb of the Rutherford Police Department were conducting an undercover drug operation. Dressed in street clothes, they drove around in a Toyota pickup truck inside the city limits of Rutherford attempting to buy drugs from various individuals. Around 10:30 p.m., they made contact with the defendant as they were driving

by a residence located at 218 Southeast Front Street in Rutherford. The defendant stopped the officers and asked if there was anything he could do for them. Officer Moody asked the defendant for a "twenty," meaning twenty dollars worth of crack cocaine. The defendant told them to "make the block" and come back. The officers complied. As they returned, the defendant emerged from the yard of the 218 Southeast Front Street residence, approached the officers, and asked to see their money. After Moody showed the defendant a twenty dollar bill, the defendant handed him a "small white yellowish rock" (Sample 1), which Moody believed to be crack cocaine.

On that same evening, at approximately 11:30 p.m., Moody and Webb completed another undercover drug buy from the defendant. As they were traveling down the same street, the defendant stopped them again and asked if they needed anything. Moody told the defendant that he needed another "twenty." The defendant told the officers that it was getting late, and they needed to "go ahead and get what [they] needed." Moody then asked the defendant for a "forty," meaning forty dollars worth of crack cocaine. The defendant instructed them to drive down the street and then turn around. As a result, Sergeant Webb was on the side of the vehicle that the defendant approached. Webb gave the defendant forty dollars, and the defendant handed him two yellowish white rocks, which Webb and Moody believed to be crack cocaine (Sample 2). This exchange also occurred at 218 Southeast Front Street.

On March 14, 2001, during the daytime, Officer Moody made a third undercover purchase from the defendant. He and a confidential informant were driving in an undercover car. The defendant stopped them, and Moody asked the defendant if he could sell him another "twenty." The informant and the defendant then went to the back of the house, and Moody pulled into the driveway. When they returned, the defendant "handed over" four yellowish white rocks, which Moody believed to be crack cocaine (Sample 3), in exchange for twenty dollars. This purchase also occurred at 218 Southeast Front Street.

A trial was held on July 16, 2002, at which Officer Moody testified to the facts as set out previously and identified the defendant as the individual who sold the crack cocaine to himself, Sergeant Webb, and the informant. He said that he sent Samples 1 and 3 to the Tennessee Bureau of Investigation ("TBI") crime lab for analysis and that Sample 2 field tested negative for crack cocaine.

Sergeant Webb also testified to the facts as set out previously for the evening of March 10, 2001, and identified the defendant as the individual from whom he and Moody purchased the cocaine. He said he was not wearing his glasses that evening; however, he was close enough to the defendant, approximately sixteen to eighteen inches, that he could clearly see his facial features. He also stated that although the field test conducted on Sample 2 was negative for crack cocaine, he sent the sample to the TBI crime lab for analysis.

Mark Dunlap, a TBI employee specializing in controlled substance identification and blood-alcohol analysis whom the parties stipulated was an expert in the field of chemistry and the analysis of narcotics, testified that he conducted an analysis of the three samples sent to his lab. He said that

Samples 1 and 3 were cocaine, but Sample 2 was not a controlled substance. He explained that lab policy required a sample to test positive under two different tests before it can be identified as a controlled substance.

The defendant's mother, Elmarie Harris, testified that she lived at 218 Southeast Front Street, and the defendant lived with her during the period he was alleged to have sold cocaine. She said that she was certain that the defendant was at home from 9:00 p.m. onward on March 10 and that if he had gone out either the front or back door, she would have heard him, explaining that it would have been hard for the defendant to get back into the house because he did not have a key to the door. She said that the front door to her home enters into the living room, and the back door was located in the kitchen, next to the living room where she slept. She normally went to sleep after 11:00 p.m. and was a light sleeper. The defendant's bedroom had a working window which "hadn't been tampered with."

On cross-examination, she said that, during March of 2001, the defendant was in and out of the house during the daytime looking for a job. She could not remember March 14, the date when the defendant allegedly sold drugs to the informant during the daytime hours, nor did she have any specific recollection of March 10.

The defendant testified that on March 10[1] he did not sell cocaine or a counterfeit substance to a police officer or any other individual. He said that he could not have committed the crimes with which he was charged because he was on house arrest, one of the conditions being that he was only allowed to leave the house from 7:00 a.m. until 11:00 a.m., to either work or look for employment. He also stated that his house arrest officer often came by to see if he was at home. Because he did not have a monitoring bracelet on his ankle, his house arrest officer had no way of knowing if he left the house unless the officer came by.

At the defendant's September 3, 2002, sentencing hearing, Nancy Richardson of the Tennessee Board of Probation and Parole testified that she prepared the defendant's presentence report. Her investigation of the defendant's criminal history revealed the following convictions:

> On January, 17, 2001 [the defendant] was found guilty of sale of cocaine. He was sentenced to three years with the Department of Corrections to serve five months with the balance of his sentence to be placed with Corrections Management Corporation. September 21, 1995 he was found guilty of driving with a revoked driver's license and he was given thirty days suspended, $25.00 fine and cost[s]. . . .
>
> March 7, 1995 theft up to $500.00. Six months suspended, joint restitution with a co-defendant. . . . March 31, 1994 pled to accessory after the fact. The original charge was simple robbery. He

---

[1]We note that defense counsel said April 10, but he was referring to March 10.

was sentenced to one year . . . . March 31, 1994, eleven months and twenty nine days . . . for evading arrest. October 3, 1985, driving under the influence of an intoxicant, ten days suspended after forty eight hours. He was ordered to JACOA. His driver's license was revoked. July 13, 1982, burglary, third degree, three years suspended after ninety days . . . . July 13, 1982, Grand Larceny, three years suspended after ninety days. Placed on supervised probation.[2]

The court made the following findings regarding the defendant's sentence:

I find that the Defendant does have an extensive criminal history. I find that there has been a demonstrated unwillingness to comply with any form of rehabilitative measures and I find that the Defendant is a Range Two Offender. I set his sentence with regard to Count One at ten years in the State Penitentiary. Count Two, three years in the State Penitentiary. Count Three, ten years in the State Penitentiary and I do order that Counts One and Three run concurrently, but that Counts One and Two run consecutively.

The court also ordered that the defendant's sentence be served consecutively to a previous sentence.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues that the trial court erred by allowing the jury verdict to stand because it was against the weight of the evidence, and the evidence was insufficient to support the verdict. Specifically, he argues that all of the trial testimony "at best show[s] a balance between the prosecution witnesses, two police officers, and the defendant and his mother."

In considering this issue, we apply the familiar rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560, 573 (1979); see also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754

_____

[2]According to the presentence report, the defendant was convicted on this date of both burglary and grand larceny.

S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The defendant was convicted of two counts of sale of a Schedule II controlled substance, as defined by Tennessee Code Annotated section 39-17-417(a):

> It is an offense for a defendant to knowingly:
>
> (1) Manufacture a controlled substance;
>
> (2) Deliver a controlled substance;
>
> (3) Sell a controlled substance; or
>
> (4) Possess a controlled substance with intent to manufacture, deliver or sell such controlled substance.

The defendant was also convicted of one count of sale of a counterfeit controlled substance, as defined by Tennessee Code Annotated section 39-17-423(a):

> It is an offense for a person to:
>
> (1) Sell;
>
> (2) Deliver; or

(3) Distribute a substance which is represented to be a controlled substance and which is substantially similar in color, shape, size, and markings or lack thereof, to a Schedule I, II, III or IV controlled substance as classified in §§ 39-17-406 – 39-17-412, in order that the substance may be sold as a controlled substance.

Both Officer Moody and Sergeant Webb testified that on the evening of March 10, 2001, the defendant sold them twenty dollars worth of crack cocaine and forty dollars worth of another substance they believed to be crack cocaine. Additionally, on March 14, 2001, Officer Moody testified that the defendant sold another twenty dollars worth of crack cocaine to a confidential informant who accompanied Officer Moody. All three transactions took place at 218 Southeast Front Street where the defendant resided at that time. Both officers repeatedly identified the defendant as the individual who sold them the cocaine on the respective occasions. Although the defendant argued that the officers had mistaken him for someone else, the jury, by its verdict, accredited the testimony of the officers, as was its right. This evidence, considered in the light most favorable to the State, was sufficient for a reasonable jury to find the defendant guilty of the charged offenses.

## II. Sentencing

The defendant argues that the trial court erred by failing to comply with the sentencing law of 1989 by applying a nonstatutory factor for sentencing and failing to weigh any properly considered factors. Specifically, he asserts that the trial court considered that "there has been a demonstrated unwillingness to comply with any form of rehabilitative measures," rather than enhancement factor (8): "[t]he defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." See Tenn. Code Ann. § 40-35-114(8) (1997). Further, he contends that there is no evidence in the record to support the application of this factor.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169. In this case, the defendant has the burden of illustrating the sentence imposed by the trial court is erroneous.

The defendant argues on appeal that while the trial court intended to apply enhancement factor (8), that the defendant had "a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," Tenn. Code Ann. § 40-35-114(8) (1997), it utilized different language in sentencing, saying that, as to the defendant, "there has been a demonstrated unwillingness to comply with any form of rehabilitative measures." According to the defendant's argument, there is a significant difference in the statutory language and the finding made by the court, and there was no evidence supporting application of this factor. We note that the presentence report contains the following information as to the defendant's noncompliance with alternative sentencing conditions imposed following his 2000 conviction for the sale of cocaine:

> Subject has a history of substance abuse. He entered JACOA's Montgomery Hall transitional living facility on April 23, 2001 and, at that time, signed a six month minimum residency agreement. Subject came from their treatment division. On May 13, 2001 subject left the facility prior to completing the program. On May 16th he was allowed to re-enter the facility signing another six month agreement. His prognosis was poor at that time.
>
> On June 17, 2001 subject was allowed to attend morning church services with the stipulation that he would return immediately following the service with his church bulletin as proof of his attendance. When the weekend staff locked the doors at curfew at 10:30 pm that evening, subject had still not returned. At 10:40 pm a car pulled up down the street, and [the defendant] exited the vehicle. He was not allowed back in the facility because it was after curfew and he smelled of alcohol.
>
> Per Dan Roberts, Manager, subject will not be allowed back in that facility because of the above behavior. It was the opinion of Mr. Roberts, based on 6000 clinical hours of working with recovering

alcoholics and addicts that treatment and/or a structured environment
would not be of benefit to subject.

Even if the trial court's finding deviated from the language of enhancement factor (8), as the defendant argues, it is apparent that the defendant had demonstrated that he was unwilling to comply with conditions of release into the community. Further, the defendant's history of convictions supports the sentences imposed by the trial court.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgments of the trial court but remand for entry of corrected judgments in Counts 2 and 3 to reflect that the three-year sentence in Count 2, rather than the ten-year sentence in Count 3, is to be served consecutively to the ten-year sentence in Count 1.

_____
ALAN E. GLENN, JUDGE